Good morning. Before we get started, I'd like to welcome the Honorable Marvin Garbus today as a part of our panel. Judge Garbus is a United States District Judge who normally sits in Baltimore. And we'd like to thank Judge Garbus for taking his time and his law clerks as well for coming to sit with us. Thank you, Judge Garbus. All right. We'll hear United States v. Jose Gil-Hernandez. Good morning. May it please the Court. My name is Robert Epstein. I'm here today on behalf of the opponent, Mr. Jose Gil-Hernandez. And with the Court's permission, I'd like to request five minutes of my time for rebuttal.  Thank you, Your Honor. The issue on this appeal concerns the issue of fast-track disparities, specifically whether a sentencing judge can take into account at the time of sentencing the substantial disparity that has been caused by the selective implementation of fast-track programs throughout this country. I would suggest there's really three sub-issues at play on this appeal. The first is whether the Supreme Court's decision in Kimbrough has overruled this Court's ruling in Vargas. And we would submit that it has, as the First Circuit and Second Circuit have both found with respect to their pre-Kimbrough decisions on this point. Second, whether the District Court in this case believed it was precluded by Vargas from considering this issue. We submit the record on that is extremely clear. Third issue is what should be the showing that a defendant would make in the District Court in order for a District Court judge to vary on this basis. And we submit the showing that a defendant would have to make would be simply eligibility, that he would be eligible to participate in fast-track programs throughout this country. Now, that was not disputed below by the government. We would submit that Mr. Gil Hernandez would qualify in any fast-track program that is offered throughout this country. Well, now, I think maybe a threshold question, maybe it's not threshold. Section 3553A6 requires courts, and I suppose I'll quote it, the need to avoid unwarranted sentence disparities, and that's Vargas, I guess, among defendants with similar records who have been found guilty of similar conduct. Where in the record is there any other evidence of other defendants and their conduct? Well, Your Honor, we submitted in the sentencing memorandum in this case that there are other defendants similarly situated to Mr. Gil Hernandez who get the benefit of these fast-track programs. Who? Oh, there are thousands of them, Your Honor. I mean, this is a systemic program. Approximately 30 percent of all illegal reentry defendants get departures pursuant to 5K3.1 under fast-track. There's even a greater percentage that get charge bargaining deals under fast-track programs. Could a plaintiff in a discrimination case carry his burden of showing age discrimination by saying there are thousands of people in the country who are discriminated against every day on the basis of age? Well, I think that's different, Your Honor, because here we have a government program, and there's no dispute about it, a government program by which literally thousands of defendants every year get the benefit. Now, the eligibility requirements of those programs are made clear in a memorandum issued by the Attorney General's office, and it's clear that Mr. Gil Hernandez would be able to participate in those programs, and there's been no dispute about that. I'd be shocked if the government argued to the contrary today. Well, I mean, A6 seems to be pretty clear about evidence of defendants with similar records who have been found guilty of similar conduct. I don't see anything in the record about any similar defendant with similar conduct. Well, as I said, we submitted in the memorandum the assertion that there are other defendants with similar conduct, illegal reentry cases, that are getting much lower sentences as a result of fast-track. That's never been in dispute here. Now, it didn't get addressed at the sentencing hearing. The reason it didn't get addressed is because everybody, most importantly the district court, believed the issue was off the table because of Vargas. Vargas had held as a matter of law that a district court could not vary on this basis. Well, but didn't the judge come out with that at the very end? I mean, that was his ruling. I don't think he had notice of that before. I don't think that limited your ability to put evidence in. Well, we knew from Vargas. I mean, actually, we acknowledged in the sentencing memorandum that Vargas precluded this issue as a matter of law, but we wanted to preserve the record on it, raise the issue, and be able to, if the Supreme Court took the action which they did in Kimbrough, to be able to raise this on appeal, which we have. So we clearly preserved the issue. I think if this court was to find, as we strongly suggest that the court should, that Kimbrough has overruled Vargas, the fair thing to do would be to remand this case to the district court, give us an opportunity to, if the court feels that there hasn't been a sufficient showing, to make that showing. And there's no doubt that we can make that showing. Again, there's literally thousands of defendants out there similarly situated to Mr. Gil Hernandez who have benefited from fast track. And I don't believe the government is going to dispute that. Would you say that if you make that showing, the district judge would be required to vary? No, Your Honor. The district court judge would be certainly free to consider the issue and decide that a variance wouldn't be appropriate. On the other hand, a district court judge might well find, as district court judges have throughout the country, that a variance would be appropriate under these circumstances. So all you're asking for is a remand for the district judge to make an individualized determination as to whether under A-6 Gil Hernandez would be entitled to a variance? Yes, Your Honor. And the only thing I would add to that is as the first circuit recognized in the Rodriguez case, district court judge can consider the issue under the other 3553A factors as well. For example, in Rodriguez. Well, the district judge did that here, right? He didn't consider the fast track issue. Right. I mean, A-6. You're saying, as I understand your argument, A-6 was off the table because the district judge looked at Vargas and said, I can't consider that. I think the district court judge and, frankly, all the parties felt that this fast track issue was off the table with respect to all of the 3553 factors. And the district court judge certainly didn't consider the fast track disparity issue with respect to any of the other factors. Now, he did consider the other factors with respect to other circumstances in the case, but not with respect to the geographic disparity resulting from the selective implementation of fast track programs. As to the initial issue that I raised, has Kimbrough effectively overruled Vargas? I think the first circuit and second circuit are correct in finding that they did. But Kimbrough concerned really the analogous issue of the powder crack disparity. And the government in Kimbrough effectively made the argument, the same argument, that the Fifth Circuit adopted in America as in the First Circuit and Second Circuit have rejected. But in Kimbrough, the government argued that this was really a congressional policy, that Congress had adopted this 100 to 1 ratio and, therefore, courts had to apply it and couldn't vary on that basis. And what the Supreme Court said in Kimbrough was, no, we don't see a clear expression of congressional policy. Congress may have adopted the 100 to 1 ratio, but they have not expressly said that district courts cannot consider it or consider the unfair effects of it at the time of sentencing under 3553. And it's the exact same thing here with fast track. Congress has given the authority for U.S. Attorney's Offices to adopt fast track programs, but Congress has not expressly spoken on the subject of the disparity that has resulted from it. Congress certainly hasn't expressly stated that district courts are forbidden from taking the disparity into account at the time of sentencing. So I think Kimbrough clearly overrules this court's decision in Vargas. As to the last of these issues, what showing a defendant would have to make, I think the fair showing that a defendant should have to make is simply that he would be eligible for participation in these programs. And I think that showing hasn't been. But why is that enough, though? In the statute, Congress, if I read the statute correctly, Congress is saying that the regional U.S. attorneys, with the consent of the attorney general, can presumably for pragmatic reasons give more lenient treatment to aliens in jurisdictions where there is a tremendous backlog of these types of cases. So let's assume Gil Hernandez is perfectly mirror image of Alien X in El Paso, Texas. Exact same criminal history, same age, same offense, etc. Isn't Congress sending a message to El Paso that, look, you can give Alien X a far more lenient sentence than this guy in Philadelphia because we have to be pragmatic here and deal with a regional problem? Why would that be an unwarranted? It's clearly a disparity. But Congress is saying it's a warranted sentencing disparity, is it not? No. Well, as the Supreme Court found in Kimbrough with respect to the crack powder disparity, that Congress there did not say that district courts cannot ameliorate any kind of prejudicial disparate effects of it for the time of sentencing. Same here. Congress may feel that U.S. attorney's offices should be able to adopt these programs and deal with this in a systemic way, but Congress hasn't said that in a particular case. But Kimbrough doesn't do anything to alter the statutory disparity in respect to crack cases, does it? No, no, Your Honor. Well, and here we've got a statutorily created disparity by Congress's creation of Fast Track. But in Kimbrough, the government argues that we have a statutorily created disparity and that it would be completely illogical to think that, and it makes no sense, to think that Congress would want that disparity to be only in the statute but not in the guidelines. It would make no sense. And what the government also argued was the sentencing commission has proposed changes to Congress, and Congress has repeatedly rejected them. The Supreme Court said not enough, that there has to be an express determination by Congress that sentencing judges can't consider this at the time of sentencing. I would also, the only other point I would make in response to that question, as these programs have actually been implemented, they haven't only been implemented in areas where they have a tremendous amount of reentry cases. In fact, for example, they've been implemented- In Idaho, I understand. That's right, in places where the prosecutors have less than one or two of these cases per prosecutor in the office per year. So it hasn't actually worked out that way. Thank you, counsel. Thank you, Your Honor. We'll hear from the government. Good morning, Your Honors. May it please the Court, Robert Zosmar on behalf of the government. Your Honor, I think it's important to unravel the legal issues here. There's more than one legal issue regarding Fast Track disparity, and with respect, I think they're being muddled a bit here. The District Court was only asked to address one of them and addressed it perfectly and consistent with this Court's precedent, which has not been overruled. There's another legal issue out there that's being muddled in, if I could clarify. The first question that comes up when you have a Fast Track disparity is does that specifically violate 3553A6, which says one of the things a judge has to do in sentencing is not have an unwarranted sentencing disparity. And so the question that's directly presented in Vargas is is it an unwarranted sentencing disparity when the gentleman in Philadelphia and the gentleman in El Paso get different sentences. And what Vargas holds is no. There clearly is not an unwarranted disparity, to use the statutory language, because Congress has provided for it. Congress has anticipated it. That aspect of Vargas, which is really the only holding in Vargas, is not questioned by Kimbrough in the least. I don't believe the defense in any case has suggested that it has. It's the unanimous view of every circuit that this is not an unwarranted disparity. Now, you then get to the next legal question, which is, okay, fine, you can have this disparity. It's not unwarranted under A6. But can the District Court nevertheless consider this disparity in its overall consideration of all of the 3553 factors when it makes a final decision regarding sentencing? And there the circuits are split. There we have the Fifth and the Eleventh Circuit saying no. There is never a legal basis for a variance based on this disparity. The First Circuit's saying no. Is your analysis with regard to both issues all taking place within just A6? No. Okay. The first is A6, and I would submit that that issue is settled, and it's not Kimbrough has nothing to do with it. It hasn't been questioned in the Supreme Court, and I don't think the defense is suggesting it, which is that if at the end of the day the court gives a different sentence to the gentleman in Philadelphia because there's no fast track program here, that cannot be rejected under A6. That's the holding of bargains. It's not an unwarranted sentencing disparity. We get to the next issue is, okay, fine, it's not an unwarranted disparity, but it is a disparity. And should the court consider it overall when it weighs all of the 3553 factors, including everything about the case? Now, that issue was not presented to this district court, and that's the important thing in looking at the record. The Fifth Circuit and the Eleventh Circuit have said there's never a basis for it. First Circuit says, yes, you should be. The judge should consider it with all the factors. Second Circuit, which my friend Mr. Epstein mentions, is an unpublished decision. It looks like they're heading in the direction of the First Circuit, but there's no precedential opinion there, and certainly nothing from this court or the Supreme Court. Counsel, let me ask this question this way from the district judge. The district judge looks at Vargas and says, okay, it's not an unwarranted disparity such as the crack cocaine differential. It's a factor I have to take into account. And let's assume that there is a showing that a great number of a significant number of people just like this defendant, same criminal record, same age, all that stuff is about the same and they're getting a lesser sentence. They're getting below guideline sentence in El Paso. Is the district judge free to say, that's very interesting, counsel, but in my discretion I don't choose to do that? Or must the district judge say, well, now that you've made that showing, I must vary? Well, actually, the government's position on that, and again, I say this issue is not presented by this case, but the Justice Department's position is actually a third option, which is no, a district court should never vary based on fast-track disparity. And I'm happy to address our legal reasoning for that. Well, your position also is you wish Booker hadn't been decided the way it was. Of course, of course. But we win some, we lose some. But let's work in the Booker world, though. I mean, isn't it clear that this district judge had the opportunity, in light of Kimbrough, to say, I think this is unfair, and even if 51 months is the bottom of the guidelines range, I'm looking at these 30 guys in El Paso, they got 20 months, those 30 guys look a lot like Mr. Gil Hernandez, I'm going to give him 30 as well. Wouldn't that be a? Absolutely. This court could have done that. No one told the court anything different. I'm here now telling you a position of the government that's been developed in the last six months, supporting the view taken in the Fifth and the Eleventh Circuits. But this is not what was said to the district court. No one said to the district court, as Judge Garba suggested, that you did not have this discretion. And reading the record, it's clear that the court viewed the guidelines as completely advisory. And that's the main point I want to get to, now having broken out these legal issues. Counsel, let me just interrupt you. So essentially what you're saying is we must discern whether the district judge did understand that he had the authority. Yes, well, I'm saying that if you discern that he thought that, which he clearly did, that that's the end of the day, that whether I'm right or wrong about whether someone can vary on this basis, if the court thought it could, then there's no harm to the defendant. There's no reason to have any new proceeding, which is what we've suggested. The important thing now is to look at the record here and see what the arguments that were made. The only argument that was ever made to the district court about fast-track disparity is on page 54 of the appendix. It's in the sentencing memorandum that was submitted by the defense. It's not mentioned at all in the government's memorandum, which was filed earlier. And at page 54, after a long section that's just about guideline sentencing in general, all the sentencing memorandum said is unwarranted disparity, we disagree with Vargas, that you're violating A6 if you give me a different sentence than I could have gotten in a fast-track district. Nothing about weighing the disparity in light of the rest of the 3553 factors. If you read the appellant's brief in this case... Except your adversary's position, is there even a record for us to remand on? No, there is no record whatsoever. If you read the appellant's brief in this case before this court and read the sentencing memorandum, they are completely different. The memorandum is limited to A6. So then what happens? We go to the sentencing hearing, and at the sentencing hearing, no one says a word about fast-track disparity. Nothing about defendants in other districts, nothing about A6, anything. We get to the final discussion by the district judge, and Judge Golden does precisely what this court has instructed. What this court has said, since Booker, is that a district judge must lay out his or her consideration of the 3553 factors, generally explain the sentence, and then address any particular issue that's been raised that warrants consideration. That's what Cooper says. And that's what the judge did. The judge went through the 3553 factors, gave a very compelling discussion of why this defendant deserved a significant sentence, based on his criminal record, based on what he did when he came to the United States, based on his complete lack of support for his family, which was supposedly the reason he came back to the United States. And then at the very end, it says, and I'm quoting, the court is also going to deny defense counsel's request for a variance under 3553A6, in which the defense counsel asked the court to adjust its sentence to compensate for the lack of a fast-track program in the Eastern District. The court based its decision on the Third Circuit's decision in Vargas. That is absolutely correct. The judge here is responding to the only argument that was presented, which is it's an unwarranted disparity under A6, and Vargas is wrong. And the judge says, I'm following Vargas. And again, this aspect of Vargas is not questioned at all by Kimbrough. The fact that you don't violate A6 by giving a different sentence here than you give somewhere else. So where in this record is anything to correct? What the defense is essentially asking for is let's do it again. Well, they want to do it again because Kimbrough was decided, right? I mean, doesn't Kimbrough change the game? Well, it doesn't change what was presented to the District Court, because Kimbrough, you can make the argument, and again, we disagree with it if we get into that, but you can make the argument that Kimbrough lets the district judge consider the disparity as a factor among all the factors. But the judge was never asked to do that, and there's nothing on the record that would suggest that the overall 3553 evaluation that the judge made would turn out any differently. This is exactly, I'm now virtually quoting from Chief Judge Staricka's opinion last week. It was a non-presidential opinion in the Columna Rivera case. But these cases are identical. In fact, my friends from the defenders in our office I think submitted identical briefs to this court in these two cases. And the result in the Columna Rivera case was exactly what I'm suggesting to this court, which is that there's no record. Failure of proof. I understand that, but as I understand Mr. Gil Hernandez's position, he's saying it was reasonable for me not to make a record because the door was shut. In the same way that it would make no sense for a defense lawyer to argue crack powder disparity prior to Kimbrough, it made no sense for Gil Hernandez to argue fast track here prior to Kimbrough and marshal all the evidence, to go to all the trouble of marshaling the evidence when the door is shut at the beginning. Now that Kimbrough has been decided, even though the statutory scheme indicates a 100 to 1 disparity crack to powder, Kimbrough says that district judges can move off of that in the post-Booker world. So why can't district judges move off of the fast track disparity in the post-Booker world? This sentence, Your Honor, was not before Kimbrough. It was after Kimbrough, if my memory serves me. Kimbrough was decided at the beginning of December of 2007. I don't have that in front of me, but I'm fairly confident about that. And this sentencing was on January 7th of 2008. I believe it was approximately a month after Kimbrough. The simple fact of the matter is. So they blew it. They had the burden of proving that their client was being treated disparately for no good reason, and they didn't marshal any evidence to show it except to say fast track there and no fast track here. That's right. And except to say that Vargas is wrong on a point, which I keep repeating, is not affected by Kimbrough. The limited point in Vargas that it's not an unwarranted disparity if you wind up giving a different sentence is not called into play by Kimbrough at all. So is your position then that even if we agree with your adversary on a legal basis, still it remains inappropriate because there's nothing in the record that would prove his case? That's right. So Mr. Gil Hernandez had a fair sentencing hearing in which his counsel took a different tact. The tact that they took, if you read through the rest of it, was really to argue for mercy and to suggest that he had family obligations, he had nothing for him in the Dominican Republic. This is the tact they took, and it's certainly a reasonable one under the circumstances. It didn't work. The reason it didn't work has nothing to do with fast track disparity. It has everything to do with the fact that this gentleman has at least two prior convictions for drug offenses. The reason he's found in the United States is because he's buying a significant quantity of heroin from somebody else. He has children with, I think, five different mothers, and he's not supporting any of them, and he's coming back to the United States. They took their shot on arguing for leniency and mercy. The government presented the facts that I've just said, and the district judge made an appropriate decision under 3553, certainly within the court's discretion. But the fast track issue just wasn't presented because that was their choice and because the facts probably would not support that there's an exact link between Mr. Gil Hernandez and those extreme circumstances I just talked about and other similarly situated people elsewhere. There's another aspect of Vargas also which isn't affected by Kimbrough, where this court has said, and it has said it in the A6 context in a number of places, that the defendant does have a burden to show that there are people in parallel circumstances. This court held in Vargas, it is not sufficient to simply say, well, they must be out there because I hear there are fast track programs in 13 other districts. The Third Circuit has said that that's not sufficient, and there's nothing in Kimbrough or Gall or any Supreme Court case about that. Those cases are about whether the court can consider a disagreement with the guidelines in imposing sentence, and it's just not implicated. Certainly we've acknowledged you could stretch Vargas. You can read it to say maybe that as a matter of law you should never have a variance. But that's not the issue presented here. If it is the issue, I'm happy to argue it and tell you our view as to why that is still good law even after Kimbrough. But it just wasn't presented here. All that was presented here was the statement that my sentence is going to violate A6. It was put in one paragraph in the sentencing memo. The judge did what he was supposed to do. He addressed that paragraph. He denied it appropriately based on Vargas, and that was the end of the matter for this defendant. Unless the court has further questions, I'll rest on the bench. Thank you, gentlemen. Thank you. I'd like to start with the legal issue and then go on to the record in this case. With respect to the legal question of whether Kimbrough overrules Vargas, of course it overrules Vargas, and it overrules it on precisely the A6 point. Kimbrough held, the holding of Kimbrough is that a district court can vary under A6 and find that there was an unwarranted disparity as a result of the powder-crack ratio. So clearly in the fast-track scenario, a district court, contrary to Vargas, can find under A6 unwarranted disparity as a result of the selective implementation of fast-track program. I don't know how the government has taken the position that Kimbrough doesn't overrule Vargas with respect to A6, but only with respect to the other factors. The factor that was at issue in Kimbrough was A6, unwarranted disparity. Now the First Circuit in Rodriguez, after Kimbrough, looks at the issue and says, yes, certainly under Kimbrough a district court judge can find unwarranted disparity under A6. They can also find other, under additional factors, reasons to vary as well. Now so clearly Kimbrough has overruled Vargas with respect to the A6 issue, and that government is right. That is the issue that was considered below, and the district court judge believed, correctly believed, that Vargas precluded him from considering the issue. I mean even defense counsel acknowledged that Vargas precluded him from considering the issue. And the district court judge couldn't have been clearer here. It says the court bases its decision on the Third Circuit's decision in Vargas, which held that a disparity based on the absence of a fast track program does not constitute an unwarranted disparity for purposes of Section 3553A6. Counsel, are you arguing that defense counsel merely must show there's a fast track program in El Paso? And that's enough. The district court then, A, can vary based upon that alone without regard to the individual defendant. Well, I think a district court judge can if the district court judge is satisfied that there's similarly situated defendants who are getting the benefits of the fast track program. We didn't get to that point here below because everybody understood the district court judge as a matter of law under Vargas couldn't even consider the issue. Well, how do you respond? Kimbrough was decided at that point. Well, no one seemed to be aware of it, the district court judge. It was never raised at sentencing. Wait a minute. No one seemed to be aware of it. Everybody had their eyes on Kimbrough. I mean, are you saying that when Kimbrough was handed down that, I don't know if you handled the sentencing or one of your colleagues, but wouldn't it stand to reason that as soon as Kimbrough was handed down that that lawyer would have run into Judge Golden's courtroom and waved at him and said, Judge, things have changed. Maybe even asked for a continuance to marshal the evidence you need. Do something. Proffer some evidence rather than just saying they have fast track, we don't. I agree, Your Honor, but the reality here is no one at the sentencing mentioned Kimbrough. Now, did we preserve the issue? Yes. We raised the issue to the district court judge. You don't wave an issue. But we don't just, I don't think our system is set up so that people just raise issues in district courts without putting forward the evidence. I mean, they don't just throw in a memorandum and then let our court sort things out. That's why we have trial judges to make records and take evidence. And you had the burden to do that here, and I don't see that that was done here. Well, Your Honor, with all respect, Kimbrough is an evidence. Kimbrough is a case, and there's no requirement on an attorney beyond raising the issue to raise the relevant case law that would support his argument. Now, obviously, it would behoove him to do that, and it's a shame that it wasn't done here, but it doesn't somehow waive the issue or affect the question of what sufficient evidence put forward on the issue. It seems like what the district court was being confronted with is, if at all, by virtue of Kimbrough, you must vary, and I don't have to do any more. And I don't think you're arguing that that's the law. I think the law is, as you're arguing it, can vary, and now we're going to show you the circumstances that permit it for this guy. Yes, Your Honor, that a district court judge can vary, but this district court judge did not believe under Vargas that he could. Under Vargas, the one decision where a district court judge did vary in Garcia-Raval, the government took an appeal and said, no, the district court can't do this under Vargas, and this court reversed pre-Kimbrough and agreed that a district court judge can't consider this. So the district court judge here clearly didn't believe he had the discretion. Now it's clear under Kimbrough that he does, and I think the fair thing would be to remand the case. As the First Circuit did in Rodriguez and the Second Circuit did in Saval, without question about what evidence the defendant might have put forward on an issue that was precluded as a matter of law in the circuit at the time. Thank you, counsel. Thank you. Thank you, counsel, for the excellent briefs and excellent oral argument. We'll take the case under advisement. Thank you, Your Honor.